UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SKINNER, #202678,

    Plaintiff,                                                                              No. 05-71150

-vs-                                                                             District Judge Nancy G. Edmunds

JOHN ANDREW BEEMER, et.al.,           Magistrate Judge R. Steven Whalen

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss and/or for Summary Judgment filed by Defendant Don Morse [Docket #52] and a Motion to Dismiss filed by Defendants John Beemer and Richard Mainprize [Docket #53], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Because all Defendants are protected by qualified immunity, I recommend that both motions be GRANTED, and that the Complaint be DISMISSED WITH PREJUDICE.

### I.    FACTS

#### A.    Procedural History

Plaintiff filed his original Complaint on March 23, 2005, raising a claim of excessive police force against Defendant Beemer, pursuant to 42 U.S.C. §1983. On October 3, 2005, he filed a motion to amend his complaint [Docket #12], seeking to add Mainprize and Morse as Defendants. Because the motion to amend was not accompanied by proof that it was

-1-

served on the Defendant, the Court denied it without prejudice. On July 7, 2006, Plaintiff filed an "affidavit in support of motion to amend complaint" [Docket #27], which the Court construed as a renewed motion to amend complaint. This filing was accompanied by a proof of service on Defendant's counsel. Ultimately, on May 21, 2007, this Court granted in part and denied in part Plaintiff's renewed motion to amend, permitting him to add Mainprize and Morse as Defendants in his §1983 count alleging violation of his Fourth Amendment/excessive force claim. However, the Court denied Plaintiff's request to add a state law count of civil conspiracy. *See* Docket #34.

On June 21, 2007, Plaintiff filed his amended Complaint, raising a §1983 claim against all three Defendants. He alleges in Count One that Defendants Beemer and Mainprize used excessive police force against him, in violation of the Fourth and Fourteenth Amendments, and that Defendant Morse "was present and observed the assistance of Defendant Mainprize in the use of excessive force by Defendant Beemer and failed to intervene or file a report." *Amended Complaint*, ¶16. In Count Two, Plaintiff brings a claim of assault and battery under state law.

On November 13, 2007, this Court entered an expedited scheduling order, setting a discovery cut-off date of January 15, 2008.

### B. Factual Background

This case stems from Plaintiff's arrest on October 9, 2003, by Defendants Beemer and Mainprize of the Michigan State Police, and Defendant Morse of the Saginaw Township Police Department. Plaintiff states that at approximately 9:00 p.m. on that date, the police

pulled him over for the misdemeanor offense of retail fraud. *Amended Complaint*, ¶ 6. Plaintiff concedes that he "exited the vehicle and evaded police by running from the area." *Id.*, ¶ 7. At about 10:30 p.m., he says, a black Grand Prix jumped the curb and struck his hip as he was walking down the street. He claims that an unidentified male in civilian clothing jumped from the Grand Prix and struck him in the eye with a pistol. *Id.*, ¶¶ 8-10. He says that he attempted to flee until other cars arrived, at which point he realized they were police officers. *Id.* ¶ 10. At that point, according to the Amended Complaint, Defendants Mainprize and Morse assisted in handcuffing the Plaintiff, who asserts that after he was handcuffed, Mainprize held his hands while Beemer "began to assault Plaintiff by hitting Plaintiff in the face and head area, and jumping up and down on Plaintiff's head." *Id*. ¶¶ 11-13. Plaintiff alleges "multiple injuries around the face and head as a result of Defendant Beemer's excessive force." *Id.* ¶ 14. He also alleges that Defendant Morse failed to intervene. *Id.* ¶ 16.

Appended to the Defendants' motions to dismiss are documents describing the events of October 9, 2003. These documents include police reports and the transcript of Plaintiff's preliminary examination in state district court. The Defendants' version of what happened, based on these documents, is as follows.

At the Plaintiff's state court preliminary examination (*Defendants Beemer's and Mainprize's Motion to Dismiss, Exhibit 1*), Defendant Beemer, a Michigan State Police officer, testified that around 9:00 p.m., on October 9, 2003, he received a radio call to be on the lookout for an individual in connection with a retail fraud. Beemer was in plainclothes

at that time. He recognized the Plaintiff, who was walking down the street, as fitting the description of the individual who had been described to him. Beemer testified that he identified himself as an officer, and that Plaintiff had his hand in his pocket. Beemer displayed his handgun, and ordered the Plaintiff to get on the ground. Instead of complying, the Plaintiff grabbed Beemer's gun. A struggle ensued, and continued even after Beemer wrested the gun away from the Plaintiff. Beemer testified that he was struggling and striking the Plaintiff, who was kicking and fighting. Beemer said that the Plaintiff kicked him in the right side of his face, breaking several teeth, and that he (Beemer) hit the Defendant about three times with his gun.

At some point, Beemer's partner, Defendant Mainprize, came to his assistance. Beemer testified that the Plaintiff jumped up on a porch, and Mainprize displayed his gun and ordered Plaintiff to the ground. The Plaintiff refused, and clenched his fist in a threatening manner. As the Plaintiff attempted to flee, he fell, and four officers were eventually able to place him in handcuffs, although Plaintiff continued to fight and kick during this time.

Following preliminary examination, Plaintiff was bound over for trial on a number of charges, including resisting and obstructing a police officer, causing injury, M.C.L. 750.81(d)(2), and resisting and obstructing, M.C.L. 750.81(d)(1). He pled *nolo contendere* to those charges, receiving sentences of 4 to 15 years and 3 ½ to 15 years, respectively.[1]

---

[1]Plea and sentencing information obtained from the Michigan Department of Corrections Offender Tracking Information System (OTIS). Plaintiff's record includes three

Attached to Defendant Morse's motion as Exhibit 2 are police reports detailing the events surrounding the Plaintiff's arrest. Det. Tom Luth of the Saginaw Township Police Department states in his report that he was dispatched to a K-Mart following a retail fraud report. Det. Luth spoke to store employees, who said that a white male had stolen a DVD player, and when Shawn Latty, one of the employees, tried to stop him, this person "reached around and backhanded Latty in the right side of the head with a closed fist," before leaving in a white Buick. Det. Luth located and followed the suspect car. He detained the female driver, but the male passenger fled from the police. The stolen DVD player was found in the back seat of the car.

Officer John Juras received information from Det. Luth that the suspect had fled from him. Luth gave Juras a description of the suspect. Juras saw the suspect walking down the street, and radioed the other task force members, including Defendant Mainprize. Subsequently, Juras received a call from Mainprize that the suspect was on the corner of Madison and Mason. Juras states that upon arriving at that location, he saw the Plaintiff "actively resisting" as he was being handcuffed, and that Defendants Beemer and Morse were "issuing loud verbal commands to quit resisting and stay still." The Plaintiff was transported to a medical facility (Covenant Cooper), where he was treated for facial lacerations. Juras also states that he "observed Det. Beemer to have several abrasions on hands and arms, as well as several teeth to be cracked and chipped."

---

prior convictions for retail fraud, and convictions for larceny in a building, escape, assault and battery (as fourth habitual offender), and possession of cocaine.

Michigan State Police Det. Jeffrey Madaj interviewed the Plaintiff following his arrest, and a summary of the Plaintiff's statement is found in Exhibit 2 to Defendant Morse's motion. The Plaintiff stated that at the time he was stopped, he did not know that Beemer was a police officer, and that Beemer "pistol whipped him for no reason." He also stated that he never attempted to disarm Beemer. However, Det. Madaj's report indicates "Skinner stated that he knew the 'older officer in the truck was a police officer,' (D/Sgt. Mainprize), but he fled on foot anyway to get away from D/Sgt. Mainprize and D/Tpr. Beemer. Skinner stated that he "had fallen in the roadway, when he ran from D/Sgt. Mainprize and D/Tpr. Beemer."

In his deposition (*Beemer's and Mainprize's Motion, Exhibit 3; Morse's Motion, Exhibit 1*), Plaintiff testified that Beemer hit him in the face about 10 times, and that in addition to suffering abrasions and cuts, he received seven stitches above his right eye and a staple in the back of his head.[2] He conceded that when he was stopped by the police earlier that evening, he fled on foot. He said that he pled *nolo* to the resisting and obstructing charges and to retail fraud.

In an affidavit attached to his Response to Defendant Morse's motion [Docket #60], Plaintiff states that Defendant Beemer jumped out of an unmarked car, and, without identifying himself as a police officer, assaulted him with his pistol. He states that he struggled in order to protect himself, when Mainprize, whom he recognized as a police

---

[2] In his original complaint, Plaintiff alleged that he received five, not seven stitches.

officer, arrived. Contrary to what he told Det. Madaj, Plaintiff states that he stopped resisting at that point. He says that after he was handcuffed, Beemer punched him in the face and head with his fists, and kneed him. Plaintiff states that when he fell to the pavement, Beemer "began stomping on my head with his feet." He states that Defendant Morse was present, but "did not intervene or file a report regarding the arrest or the use of excessive force."

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### B. Qualified Immunity

Qualified immunity is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the

time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

Once a defendant has met the burden of affirmatively pleading the defense, the ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006); Wegener *v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

### III. ANALYSIS

#### A. Statute of Limitations

Defendants Mainprize and Morse, who were not named in the original complaint, but added in the Plaintiff's amended complaint, argue for dismissal based on the statute of limitations.

In a §1983 action, federal courts apply state personal injury statutes of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* M.C.L. §600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). The limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

The cause of action in the present case accrued on October 9, 2003. The earliest date the statute of limitation would have run, therefore, is October 9, 2006. Defendants premise their argument on the fact that the Court granted leave to file the amended complaint on May

21, 2007, and the amended complaint was then filed, pursuant to this Court's order, on June 21, 2007. However, this argument ignores the fact that Plaintiff filed his first motion to amend the complaint to add Mainprize and Morse on October 3, 2005, well within the statute of limitations. Further, even though the motion to amend was denied without prejudice, due to improper service, the Plaintiff filed an 11-page "affidavit" on July 7, 2006, which the Court explicitly construed as a motion to amend. *See* Docket #27. This date also precedes the running of the statute of limitations.

It is the date of filing the motion to amend that controls for purposes of the statute of limitations. "'[T]he date of the filing of the motion to amend [the complaint] constitutes the date the action was commenced for statute of limitations purposes.'" *Bass v. World Wrestling Federation Entertainment, Inc.* 129 F.Supp.2d 491, 507 (E.D.N.Y. 2001), quoting *Northwestern Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts,* 769 F.Supp. 498 (S.D.N.Y.1991). Therefore, it is not necessary to decide whether, under Fed.R.Civ.P. 15(c), the amended complaint "relates back" to the filing of the original complaint, because the amended complaint itself was filed within the three-year limitations period. The amended complaint is therefore not subject to dismissal under the statute of limitations.

### B. The State Law Assault and Battery Claim

The amended complaint [Docket #36], sets forth two causes of action. The first is a claim of excessive force under the Fourth and Fourteenth Amendments. The "second cause of action," set forth in ¶¶ 19-20 of the amended complaint, alleges "that Defendants violated state law of assault and battery and the regulations of Michigan State Police Department,

Saginaw Township Police Department, and Saginaw County Safe Streets Task Force."

This Court's order of May 21, 2007 [Docket #34], granting Plaintiff's motion to amend the complaint, clearly states that Plaintiff sought to amend his complaint in only two respects: (1) to add Mainprize and Morse as Defendants in the Fourth/Fourteenth Amendment count under §1983, and (2) to add a state law count of civil conspiracy. Plaintiff neither requested nor received leave of the Court to add a state law count of assault and battery. Under Fed.R.Civ.P. 15(a), Plaintiff cannot amend his complaint without leave of the Court. Further, to the extent that he now seeks to do so, he is time-barred. The statute of limitations for assault and battery is two years, M.C.L. 600.5805(2); *Lemmerman v. Fealk*, 449 Mich. 56, 63, 534 N.W.2d 695 (1995), and thus would have run on October 9, 2005.

Because the Plaintiff never obtained leave of the court to add a claim of assault and battery, that cause of action should be dismissed.

### C. Qualified Immunity

Under *Saucier v. Katz, supra*, the first question in a qualified immunity analysis is whether a constitutional violation occurred. Here, the Plaintiff alleges that the Defendant police officers used excessive force in arresting him.

In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

*See also Smoak v. Hall, supra*, 460 F.3d at 783. This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397.

Applying the first *Gaddis* factor to the present case, retail fraud (shoplifting) is not, in and of itself, one of the more serious crimes. The facts of this case, however, elevate the severity of that offense. Specifically, before Plaintiff fled with the merchandise, he assaulted a store employee by striking him with a closed fist. Then, when initially stopped by the police, he fled on foot, leaving behind the car, the female driver (who was also charged), and the stolen DVD player. The other offense with which Plaintiff was charged–resisting and obstructing a police officer causing injury–is indeed a serious offense, particularly in view of Defendant Beemer's own injuries. Given the assaultive nature of the offenses, the first

*Gaddis* factor weighs against Plaintiff's claim of unreasonable force.

As to the second factor, the evidence, even viewed in the light most favorable to the Plaintiff, shows that a reasonable police officer (again, the test is an objective one) would perceive a threat to his safety or the safety of others. At the time Defendant Beemer encountered the Plaintiff, he knew that Plaintiff had already fled from other armed officers. While there may be a question of fact as to whether the Plaintiff grabbed Beemer's gun, there is no question that they engaged in a struggle, during which Beemer suffered cracked and broken teeth, and Plaintiff was struck with Beemer's gun. In addition, although Plaintiff claims that Beemer did not identify himself as a police officer, the test is not how the situation subjectively appeared to this Plaintiff, but how it objectively appeared to the Defendant police officer. Objectively, Beemer was aware that a suspect in a theft, who had fled from the police earlier that evening, was offering physical resistance to arrest.[3]

Moreover, Defendants Mainprize and Morse arrived on the scene after the struggle between the Plaintiff and Beemer had begun. Thus, it would have objectively appeared to an officer arriving on the scene that the suspect was actively resisting arrest by a fellow officer. "In many of the cases involving excessive force, the plaintiff's resistance is what

---

[3] At Plaintiff's preliminary examination, Beemer testified that he had his badge around his neck, and that he identified himself as a police officer several times, ordering Plaintiff to the ground. Given that Beemer was working as part of a multiple-officer task force in pursuit of a fleeing suspect, it is highly unlikely that he would *not* have identified himself as an officer. But even assuming that the Plaintiff, for whatever reason, did not hear Beemer identify himself, again, that is irrelevant under *Graham*, since the relevant question is how the circumstances would have objectively appeared to a reasonable officer.

-13-

triggered the use of force from the officers." *Smoak v. Hall, supra*, 460 F.3d at 783.

Likewise, the third factor weighs against the Plaintiff, because he was "actively resisting arrest or attempting to evade arrest by flight."[4] In his deposition, the Plaintiff conceded that he fled when he was initially stopped by the police. Furthermore, in his post-Miranda statement to Det. Madaj, Plaintiff stated that in the later encounter, even though he recognized Defendant Mainprize as a police officer, he again fled in order to get away from Beemer and Mainprize. Plaintiff also told Det. Madaj that he fell when he ran from the officers. These statements corroborate Beemer's preliminary examination testimony and police report.

Beemer concedes that he fought with the Plaintiff and struck him with his pistol during the struggle. Although Plaintiff has not presented any independent medical corroboration of the extent of his injuries, his claimed injuries are consistent with Beemer's account of the events. In any event, the severity of a physical injury is not dispositive of the question of whether the degree of force used was reasonable. Indeed, there are circumstances

---

[4] Defendants argue that Plaintiff is collaterally estopped from contesting the fact that he resisted arrest, based on his state court plea to resisting and obstructing. However, Plaintiff did not plead guilty, but rather pled *nolo contendere*. Under Michigan law, "neither a plea of nolo contendere nor a conviction based thereon prevents the person who entered that plea from maintaining innocence in subsequent civil litigation regardless of whether the person who entered the plea is the plaintiff or the defendant in the subsequent litigation." *Lichon v. American Universal Ins. Co.,* 435 Mich. 408, 431, 459 N.W.2d 288 (Mich.1990). In other words, "collateral estoppel does not prevent Plaintiff from recovering in this Section 1983 suit, despite the fact that he has pled nolo contendere to a charge of resisting or obstructing a police officer." *Green v. Dupuis*, 2005 WL 2739378, *6 (E.D.Mich.,2005).

where an officer may reasonably use even deadly force. *See Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The question is whether the officers used reasonable force under the circumstances as perceived by them, filtering out the distorting effects of hindsight, and with due deference to their on-the-scene professional judgment. Here, the officers were confronted with an individual who by his own admission fled when he was first stopped by the police, resisted and obstructed arrest by fighting with Defendant Beemer (who himself was injured), and who again fled (and fell) even when he recognized Defendant Mainprize as a police officer. The evidence shows overwhelmingly that Plaintiff received his injuries during a struggle with Defendant Beemer, while he was forcibly resisting a lawful arrest.

Again, in an excessive force/qualified immunity analysis, a court must look at the totality of the circumstances. *St. John v. Hickey, supra*. In a summary judgment motion, the Plaintiff has the burden of proffering "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252 (emphasis added). A mere scintilla will not suffice. *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 432 (6th Cir.2002). In this case, taking the record as a whole, *Simmons-Harris v. Zelman, supra*, no reasonable trier of fact could find in favor of the Plaintiff on his excessive force claims or his "failure to protect" claim against Defendant Morse.

Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, a police officer acting in the course of his official duties is protected by qualified immunity. The Plaintiff in this case has not carried his burden of showing a

Fourth/Fourteenth Amendment violation, and therefore his complaint should be dismissed on the basis of qualified immunity.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant Morse's Motion to Dismiss and/or for Summary Judgment [Docket #52], and Defendant Beemer and Mainprize's Motion to Dismiss [Docket #53] be GRANTED, and the amended complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the

objections.

                                                S/R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated: January 29, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 29, 2008.

                                                S/G. Wilson
                                                Judicial Assistant